IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **WENDY SCHACHTE WHITEHURST,** | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| **v.** | : | **C.A. No.** |
| | : | |
| **CAESAR RODNEY SCHOOL** | : | |
| **DISTRICT, a Delaware School District,** | : | |
| **KEVIN FITZGERALD, in both his** | : | |
| **individual capacity and in his official** | : | |
| **capacity as the Superintendent,** | : | |
| **DAVID PERRINGTON, in his individual** | : | |
| **capacity,** | : | |
| | : | **Jury Trial Demanded** |
| Defendants. | : | |

## COMPLAINT

### I. NATURE OF THE CASE

1.      This is an action brought by Plaintiff Wendy Schachte Whitehurst (hereinafter

"Plaintiff" or "Schachte") against Defendants Caesar Rodney School District, Superintendent

Kevin Fitzgerald, and former Director of Human Resources David Perrington (collectively

"Defendants") for failure to promote based upon a) age discrimination and b) retaliation for

engaging in a protected relationship under the Free Association Clause of the First Amendment

and the Equal Protection Clause of the Fourteenth Amendment of the Constitution.

### II. JURISDICTION

2.      The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 and 1343,

28 U.S.C. §§ 2201 and 2202, and the First Amendment and Fourteenth Amendments to the U.S.

Constitution.  The cause of action arises under 42 U.S.C. §§ 1983.  The claims arose in this

judicial district.

3.      This Court has supplemental jurisdiction over the Delaware state law claim under the Delaware Discrimination in Employment Act ("DDEA"), 19 Del. C. §§ 710, *et seq.*, pursuant to 28 U.S.C. § 1367.

4.      All conditions precedent to DDEA jurisdiction have been complied with or have occurred. On or about October 18, 2014, Plaintiff, within less than 120 days of the commission of any unlawful employment practice, filed a charge of employment discrimination for age discrimination by going to and filing a Charge of Discrimination with the Delaware Department of Labor ("DDOL").

5.      After exhausting her administrative remedies, on or about July 29, 2014, the DDOL issued to Plaintiff a Right to Sue Letter, which Plaintiff received the following week. This Complaint has been filed within 90 days of her receipt of that Right to Sue Letter.

6.      Plaintiff also timely filed parallel federal age discrimination charges with the Equal Employment Opportunity Commission ("EEOC") within less than 300 days of the commission of any unlawful employment practice. Plaintiff has requested a right to sue letter from the EEOC pursuant to the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.* and is awaiting receipt. Upon receipt, Plaintiff anticipates amending this Complaint to include those charges of age discrimination as well.

### III. THE PARTIES

7.      Plaintiff Wendy Schachte Whitehurst ("Schachte" "Schachte Whitehurst" or "Plaintiff") is a citizen of the United States and a resident of Delaware. Unless noted otherwise, at all times material hereto, Plaintiff was an employee of the Caesar Rodney School District. At all times material hereto she was a diligent and loyal employee who always performed her job in an exemplary manner.

2

8.      Defendant Caesar Rodney School District ("Defendant Caesar Rodney" or "the District") is a school district within the State of Delaware. It employs more than 500 employees. It is included as a Defendant under 42 U.S.C. § 1983, but not for punitive damages. It is included as a defendant for the purposes of the DDEA (and ultimately "ADEA"), as well.

9.      Defendant Kevin Fitzgerald ("Fitzgerald"), at all times material hereto, has been the Superintendent of the Caesar Rodney School District and Executive Secretary of the District's School Board. He is sued in his individual and official capacities for the discriminatory and retaliatory actions under 42 U.S.C. § 1983 which were taken against Plaintiff. Since individuals cannot be sued under the DDEA (or "ADEA"), he is not included as a defendant for the purposes of violation of that Act.

10.     Defendant David Perrington ("Perrington"), at all times material hereto, was the Director of Human Resources for the Caesar Rodney School District. He was the Assistant Superintendent for the District since being appointed to the position by the School Board in January 2012. He is sued in his individual capacity for discriminatory and retaliatory actions under 42 U.S.C. § 1983 which were taken against Plaintiff. Since individuals cannot be sued under the DDEA (or "ADEA"), he is not included as a defendant for the purposes of violation of that Act.

11.     Defendants Fitzgerald and Perrington (collectively "Individual Defendants") have been close friends.

## IV.  THE FACTS GIVING RISE TO THE ACTION

### A.  Plaintiff's Background and Credentials.

12.     Plaintiff is a 52 year old female. Her birth date is December 4, 1961. She received a Bachelor of Science Degree in Elementary Education in 1985 from Delaware State University. She then went on to earn a Master of Arts Degree in Special Education from

3

Delaware State University in 1987. Later in life (in 2009) she completed her doctoral thesis and earned her Doctor of Education Degree in Educational Leadership from Wilmington University.

13.     On or about August 2002, Dr. Schachte was hired by the District as a Fifth Grade School Teacher. Prior to being hired by Defendant Caesar Rodney, she had more than seventeen years of experience teaching in elementary schools with the Lake Forest School District in Felton, Delaware.

14.     During her employment with Defendant Caesar Rodney, Plaintiff's performance evaluations have always been either exemplary or satisfactory with outstanding comments.

15.     Throughout her career in education, Plaintiff has earned numerous awards and recognitions, including multiple grant awards. These include, but are not limited to, the following: a 2013 Del Dot Safe Routes to School grant award for $187,000, a 2012 Superstars in Education Achievement Liaison Award, a 2011 State Farm Parent Initiative grant award for $3,960, Delaware Lieutenant Governor's First Excellence in Parent Involvement in 2010, a 2010 Parent Information Center grant award for $5,000, Delaware Department of Education's Distinguished Educator in 2009 and renewed in 2012, publication of her doctoral dissertation "Voices That Emerge: Understanding Formative Assessment from the Student's Eye View" in 2009, publication of a State of Delaware Unit "Means of Exchange, Economics Standard" in 2008, publication of her book "101 Things They Don't Tell Teachers in College" in 2006, a 2003 MBNA's Most Innovative grant award, named District Teacher of the Year for Lake Forest School District in 1996, named Building Teacher of the Year for Lake Forest North Elementary School in 1996, Delaware Association of Childhood Education Hall of Excellence Award in 1996, Delaware State Board of Education Excellence in Teaching Award in 1996, University of Delaware Outstanding Educator Award in 1996, and Delaware State Senate Tribute Dedication and Commitment Award in 1996. She has also served on multiple committees with W.R. Brown

4

Elementary School ("W.R. Brown" or "Brown Elementary"), the District and the Delaware Department of Education ("DDOE") beginning in 2005 and continuing through the present. These include, but are not limited to, the following: directing the opening of Delaware's first Kent County Parent Resource Center, founding the Family Involvement Team at W.R. Brown, W.R. Brown's School Success Plan Committee, W.R. Brown's Writing Committee Chairperson, W.R. Brown's Positive Behavior Support Committee, a Math Lead Teacher at W.R. Brown, W.R. Brown's School Improvement Committee Chairperson, the District's Achievement Liaison Committee, the District's Parent Involvement Policy Development Committee, the District's Social Studies Development Committee - 502 Alignment, the District's Standards Based Grading Committee, DDOE's Delaware Performance Appraisal System ("DPAS") II Internal Measures, DDOE's Comprehensive Success Review Committee, DDOE's Delaware Comprehensive Assessment System ("DCAS") Standard Setting Committee, DDOE's DCAS Item Review Committee, DDOE's DCAS Fairness and Sensitivity Committee, DDOE's Delaware Distinguished Educator's Committee, DDOE's Delaware Education Support System, DDOE's Education Success Planning Project Management, DDOE's Delaware State Testing Program, DDOE's Writing Prompt Development Committee, DDOE's Writing Commentary Committee, and DDOE's Benchmarking Writing Committee. She also has conducted several staff development presentations on various topics. These include, but are not limited to, the following: Text Based Writing and the Common Core; Math and the Common Core; Learning Focused Strategies: Acquisition Lessons; Learning Focused Strategies: Extending Thinking; guest speaker for Delaware Services for Children, Youth and Their Families; guest speaker for Wilmington University's Administrative Doctoral Program; Professional Learning Communities, Grade Level Facilitator - Grades 1-5; Assessment Plan, Grades Should Be Accurate: Parts I & II; Assessment Plan, Grades Should Support Learning; Curriculum and Instructions and General

5

Principles of Assessment; DDOE's Writing; 6+1 Traits of Writing; and Classroom Instruction That Works.

16.     On or about 2004, Plaintiff earned her Administration Certification from Wilmington University.

17.     On or about 2009, Plaintiff successfully defended her doctoral dissertation and was awarded a Doctorate of Education.  Her research and dissertation, entitled "Voices That Emerge: Understanding Formative Assessment from the Student's Eye View," was on the perceptions and the self-efficacy of students as it related to their learning experiences of formative assessment in the classroom and how knowledge and instructional strategies of formative assessment empowers students and teachers to improve the learning milieu.  Dr. Schachte used data and statistics from the District as part of her research and application for her doctoral dissertation.  This dissertation was later published in 2009.

18.     Upon information and belief, Plaintiff is one of only two teachers in the district with a doctorate.

19.     On or about 2009, Plaintiff was named Delaware Department of Education's Distinguished Educator.

20.     On or about 2009, Plaintiff was promoted to the position of Achievement Liaison Teacher at W.R. Brown Elementary School.  This position served as a liaison between the principals and teachers at the school.  Its responsibilities are a blend between administration and instruction.

21.     In 2010, Plaintiff began applying for Assistant Principal positions in Defendant Caesar Rodney School District, but she never was allowed past the first interview.  As such, she never made it to a final interview before the Caesar Rodney School Board.

22.     This is significant because typically 1) three candidates were presented to the

6

Caesar Rodney School Board, and 2) Defendants Fitzgerald and Perrington were in charge of and responsible for selecting candidates for the final interviews before the School Board.

23.     Plaintiff inexplicably was never considered to be one of the top three candidates at any time despite her impressive credentials, teaching experience, and ability to perform well in an interview setting.

24.     Plaintiff continued to garner more educational awards and recognition.

25.     For example, on or about 2010, Plaintiff was awarded Delaware's Lieutenant Governor's First Excellence in Parent Involvement Award.

26.     On or about 2011, Plaintiff founded the Family Involvement Team at W.R. Brown Elementary School.

27.     On or about 2012, Plaintiff received the Superstars in Education Achievement Liaison Award.

**B.  Plaintiff's Unavailing Attempts at Promotion to an Assistant Principal Position.**

28.     On or about 2010, Plaintiff applied and interviewed for Assistant Principal positions with Capitol School District and Christiana School District. With both of these districts, Plaintiff was selected for the final round of interviews for the administrative level positions. Ultimately she was the runner up to internal candidates who were selected for the positions.

**1).  Caesar Rodney's Brown Elementary School - 2010.**

29.     On or about 2010, Plaintiff applied and interviewed for an Assistant Principal position at W.R. Brown Elementary School with the District. Inexplicably, she was not selected for a second round interview for the position. Plaintiff was not hired for the position. A less qualified, significantly younger employee was offered the position. Moreover, the successful applicant at the time did not hold any advanced degrees, unlike Plaintiff, and had significantly

7

less teaching experience.

### 2) Caesar Rodney's Star Hill Elementary School - 2010.

30.     On or about 2010, Plaintiff applied and interviewed for an Assistant Principal position at Star Hill Elementary School with the District. Inexplicably, she was not selected for a second round interview for the position. Plaintiff was not hired for the position. A less qualified, significantly younger employee was offered the position. Once again, the successful applicant at the time did not hold any advanced degrees, unlike Plaintiff, and had significantly less teaching experience.

### 3).     W. B. Simpson Elementary School - 2012.

31.     On or about 2012, Plaintiff applied and interviewed for an Assistant Principal position at W.B. Simpson Elementary School with the District. Inexplicably, she was not selected for a second interview for the position.   Plaintiff was not hired for the position. A less qualified, significantly younger employee was offered the position. Once again, the successful applicant at the time did not hold any advanced degrees, unlike Plaintiff, and had significantly less teaching experience.

32.     Despite Plaintiff's stellar work and performance history as well as her rigorous doctorate program in School Leadership, she did not receive the position. Instead, Nicole McDowell ("McDowell"), a woman in her 30s, received the position.   She had been a Resource Teacher from out of state.   McDowell was less qualified than Plaintiff because she only possessed a masters, has less teaching experience than Plaintiff, had significantly less District and DDOE involvement and leadership.

### 4).     Nellie Hughes Stokes Elementary School - 2012

33.     On or about 2012, Plaintiff applied and interviewed for an Assistant Principal position at Nellie Hughes Stokes Elementary School with the District.  Inexplicably, she was not

selected for a second interview for the position. Plaintiff was not hired for the position. A less qualified, significantly younger employee was offered the position. Once again, the successful applicant at the time did not hold any advanced degrees, unlike Plaintiff, and had significantly less teaching experience.

34.    Despite Plaintiff's stellar work and performance history as well as her rigorous doctorate program in School Leadership, she did not receive the position. Instead, Darisa Everett ("Everett"), a woman in her 30s, received the position. She had been an Acheivement Liason Teacher for one year. Everett was less qualified than Plaintiff because she only possessed a masters, has less teaching experience than Plaintiff, had significantly less District and DDOE involvement and leadership, and had only served as an Achievement Liaison Teacher for a single year.

### 5). Allen Frear Elementary School - May 2013.

35.    On or about May 2013, Plaintiff learned of the open Assistant Principal position at Allen Frear Elementary School through Defendant Caesar Rodney's online job board and the discussions of other Achievement Liaison Teachers.

36.    On or about June 1, 2013, Plaintiff submitted her application for an Assistant Principal position at Allen Frear Elementary School.

37.    On or about June 22, 2013, Plaintiff heard from another teacher that interviews for the Assistant Principal position had already been set up and the candidates selected for interviews had been notified on or about June 17, 2013.

38.    On or about June 22, 2013, Plaintiff had yet to receive a phone call or other notification about scheduling an interview. The interviews were scheduled to be conducted on June 27, 2013, which was only three business days away.

39.    On or about June 23, 2013, Plaintiff followed up on her application for the

9

Assistant Principal position, emailing the Director of Human Resources (Defendant Perrington) and Joyce Lebright ("Lebright"), Supervisor of Human Resources. In her email Plaintiff asked if the interviews for the Assistant Principal position had been scheduled for June 27, 2013.

40.     On or about June 24, 2013, Lebright responded to Plaintiff's email and confirmed that the interviews had been scheduled for June 27th.

41.     On or about June 24, 2013, Plaintiff then inquired whether all the candidates being interviewed had been notified. Lebright responded with an email asking if Plaintiff had applied for the position. Approximately five minutes after her email and before Plaintiff could reply, Lebright sent another email offering to "put her in" for 1:45 p.m. on Thursday.

42.     On or about June 24, 2013, Plaintiff replied to Lebright asking what she meant by "put in." Lebright did not answer her question and instead again emailed the time and location of the interview.

43.     Still confused by Lebright's initial response, Plaintiff again asked for clarification of what Lebright meant by the term "put in" and if it meant that her initial qualifications were insufficient but that she had been given an interview slot because she had inquired about it. Lebright again avoided Plaintiff's question and responded that she apologized for the H/R term and that Plaintiff's qualifications were sufficient.

44.     On or about June 24, 2013, Plaintiff emailed Lebright that it appeared that the H/R terms were causing communication problems and that her answers were evasive and non-responsive. Plaintiff also pointed out that none of her questions had been answered directly.

45.     On or about June 24, 2013, Lebright replied that she had not been trying to be evasive or non-responsive. She said that they were still contacting teachers to schedule interview times and apologized for her short answers. Lebright also added that she had Plaintiff at 1:45 p.m. on the interview schedule.

10

46.     On or about June 24, 2013, Plaintiff confirmed that she would attend the 1:45 p.m. interview at Allen Frear Elementary School on June 27, 2013.

47.     On or about late June 2013, Plaintiff contacted the principal at Allen Frear Elementary, Tara Faircloth, ("Faircloth"), (c. late 30s) to speak with her about the school, its goals and visions, and express her interest in the Assistant Principal position in preparation for her interview.

48.     Even before she went into the interview with the interview panel, Plaintiff felt humiliated because it was obvious that she had only been given an opportunity to interview because she had inquired about it three days before the interviews were to be conducted.

49.     The interview panel consisted of Defendant Perrington, parents of students who attended the school, teachers, and other Defendant Caesar Rodney's employees, including Faircloth and Kevin Thompson ("Thompson"), Director of Student Services. Almost inevitably, Defendant Perrington would make sure that as the Director of Human Resources he was present for candidate interviews.

50.     It is Plaintiff's understanding that Interviewees supposedly were rated on their answers to ten questions scored by a rubric with each interview panel member individually rating the candidates' responses on a scoresheet.

51.     Just prior to the interview, while walking down the hallway with Plaintiff, Defendant Perrington started out by stating that Defendant Caesar Rodney had so many people apply for this particulare Assistant Principal position.

52.     Defendant Perrington also asked Plaintiff if she knew anyone on the interview panel. Plaintiff replied that she did not.

53.     During the interview, Faircloth kept her head down and avoided looking at Plaintiff. She did not smile or interact with Plaintiff, other than to ask the assigned question.

Throughout the interview Faircloth was cold and distant towards Plaintiff.

54.     Defendant Perrington's body language and facial expressions were rude throughout the interview. His overall demeanor indicated that he felt that Plaintiff's interview was a waste of his time. He did not appear to pay attention to Plaintiff's answers and instead kept his head down and avoided making eye contact or looking at her.

55.     Plaintiff answered the panel's questions, pointing out her achievements, experience, examples of her leadership, and excellent qualifications for the position. In response to a question about how she had raised student achievement, she discussed her implementation of a formative assessment tracking system for students building-wide that had resulted in raising a high level of student achievement, students being involved in and learning to track their own assessments, and students learning about how to set goals for themselves in terms of their own learning progress. She also pointed at that she had demonstrated this raise in student achievement at one of the toughest and most challenging elementary schools in the District.

56.     At end of the interview Thompson walked Plaintiff out of the room. Defendant Caesar Rodney's typical practice is for the H/R employee present at the interview to walk the candidate out of the room. At Plaintiff's interview, Defendant Perrington, as Director of H/R, should have walked her out of the interview room. He did not.

57.     As Plaintiff left the interview room, she noticed Defendant Perrington and Faircloth together off from the rest of the interview panel talking tete-a-tete.

58.     On or about July 1, 2013, Defendant Perrington called Plaintiff to inform her that she had not been selected for a second round interview for the Assistant Principal position. He told her that "we had a very rich applicant pool in which three candidates were moved to the next step."

59.     On or about July 1, 2013, Plaintiff was not selected for a second round interview

with Defendant Caesar Rodney's Board of Education for the Assistant Principal position.
Significantly younger, less qualified candidates received offers for a second round interview.
Unlike Plaintiff, these candidates did not possess doctorates, had less teaching and leadership
experience, and had fewer awards and commendations than Plaintiff.

60.    Kimberly Simmons ("Simmons"), First Grade Teacher, (c. late 40s-early 50s) was
also not selected for a second round interview despite the fact that Simmons was named "Caesar
Rodney School District's Teacher of the Year" for 2012-2013.

61.    Tobi Paige, Achievement Liaison Teacher, (c. 50 years old) also was not selected
for a second round interview.

62.    Upon information and belief all three of the candidates selected by Defendant
Caesar Rodney for a second round interview with Defendant Caesar Rodney were in their late
20s or early 30s and did not possess doctoral degrees, unlike Plaintiff, and had less teaching
experience than Plaintiff.

63.    Despite Plaintiff's stellar work and performance history as well as her rigorous
doctorate program in School Leadership, she did not receive the position. Instead, Julie Walls
("Walls"), approximately 28 years old, received the position.  Walls was less qualified than
Plaintiff because she only possessed a master's, has less teaching experience than Plaintiff, had
significantly less District and DDOE involvement and leadership, and had only served as an
Achievement Liaison Teacher for a single year.

### 6). Six Other Assistant Principal Positions from 2008 - 2010

64.    Plaintiff applied for six other Assistant Principal Positions from 2008 through
2010. Four of those positions were filled by candidates who were in their early 30s. One was
filled by a candidate in her 20s.  One was filled by a candidate who was older than 40 years old,
but not as old as Plaintiff.

65.    As a result of Defendants' adverse actions, Plaintiff has suffered financial and emotional damages. She has failed to receive an administrative level position, and the higher salary that goes along with such a position, despite numerous applications, interviews and being highly qualified, due to the discrimination she has suffered while employed by Defendant Caesar Rodney. She has suffered past and future economic loss, past and future wage loss, back pay loss, front pay loss, and losses relating to what she will receive in future for her retirement benefits. She has also suffered severe emotional pain and suffering, embarrassment and humiliation resulting from the discriminatory and disparate in which she was treated.

66.    As a direct and proximate result of the actions of the Defendant and its agents as detailed herein, Plaintiff has suffered irreparable injuries, including but not limited to past and future economic loss, past and future lost wages, lost back pay and front pay, lost pension and retirement benefits, and other lost benefits, decreased employment opportunities and other economic losses, emotional pain and suffering, mental anguish, humiliation, embarrassment, personal indignity and other intangible injuries for all of which she should be compensated.

**C.    The Defendants' Motivations.**

**1).    Plaintiff's Age.**

67.    Given Plaintiff's credentials compared to the other candidates it is inexplicable why she would not make it to the final interview before the Caesar Rodney School Board. The fact that she was significantly older than other candidates who were presented to the School Board and more than two decades older than the candidate offered the Allen Frear Elementary School position provides an illegal, discriminatory motive for the failure to promote her.

2)      **Attorney Whitehurst.**

      a)      **About Mr. Whitehurst, Defendant Fitzgerald and Defendant Perrington.**

68.      In 1995, Dover, Delaware attorney Charles E. Whitehurst, Jr. ("Mr. Whitehurst") represented a Caesar Rodney High School student at an expulsion hearing. Both Defendant Fitzgerald and Defendant Perrington testified and were cross examined by Mr. Whitehurst, who employed a rather aggressive style of questioning. The case was appealed to the State Board of Education, and eventually the student was reinstated. About the same time, Defendant Perrington left the school district and did not return for four years.

69.      Mr. Whitehurst has been working in private practice in Dover, Delaware for over 30 years, and as a former Caesar Rodney High School football running back, he developed a strong affinity for Caesar Rodney School District.

70.      So in 1996, Mr. Whitehurst was elected to the Caesar Rodney School Board. He served on the Board for 15 years. For a time, Mr. Whitehurst was friendly with Defendant Fitzgerald, and he even did some legal work for a family member of Fitzgerald. Once, Defendant Fitzgerald told Mr. Whitehurst that attorneys can be really intimidating and added "that's the reason [Defendant] Perrington left."

71.      After Defendant Perrington came back to the District, Defendant Fitzgerald and he became close. Neither of them liked lawyers or people challenging their authority and/or questioning District policies. When as a Board Member Mr. Whitehurst would question them on such matters, the discussions could get particularly intense. For example, this happened when he questioned Defendant Fitzgerald about the new race to the top pilot program because at the time it did not have any end goals.

72.      Sometime between October 2010 and June 2011, Mr. Whitehurst became aware

15

of allegations that Craig Wearden ("Wearden")(then a principal at Brown Elementary) was falsifying teacher evaluations. He brought this up during a Board meeting. The Board agreed that if the allegations were true that Wearden should be terminated. Defendant Perrington, a good friend of Wearden's, was present for those discussions. Mr. Whitehurst also talked separately with Defendant Fitzgerald about the apparent need to terminate Wearden. Defendant Fitzgerald told Mr. Whitehurst that Wearden wouldn't be terminated.

73.     Ultimately, Wearden was promoted to Supervisor of Transportation, a district-wide position with a higher salary than a Principal. Upon information and belief, Defendant Perrington, as Director of Human Resources, caused Wearden to be promoted.

74.     By the year 2010, it was obvious that Defendants Fitzgerald and Perrington did not like Mr. Whitehurst.

<b>b).     Plaintiff's Association with Mr. Whitehurst.</b>

75.     Unfortunately, Plaintiff has been prejudiced by her association with Mr. Whitehurst. After Plaintiff began dating Mr. Whitehurst, Defendants Fitgerald and Perrington treated her differently. They no longer communicated with her in the customary manner in school social settings and avoided her.

76.     Mr. Whitehurst and Plaintiff had dated briefly when they were in their twenties. More recently they began dating in October of 2010.

77.     At the time, under Delaware law Mr. Whitehurst was legally separated from his then wife and had been separated for a number of years. The general public was not aware of this because they still lived in the same house, but in separate bedrooms.

78.     Mr. Whitehurst moved out of his house and in with Plaintiff in December 2010. He moved in with her because they had talked and knew that it was going to be a long-term relationship. They even talked about getting married eventually. He also changed his mailing

16

address.

79.    In early Spring of 2011, Defendants Fitzgerald and Perrington became aware of

Plaintiff's relationship with Mr. Whitehurst. In March 2011, they attended an event together at

one of the District's schools. Shortly thereafter, Mr. Whitehurst mentioned to Defendant

Fitzgerald that they were seeing each other. Soon thereafter, Mr. Whitehurst decided to run for

re-election to the school board. Despite his 15 years of service on the board, he lost the election.

80.    Mr. Whitehurst and Plaintiff continued to grow even closer. They talked about a

plethora of issues with each other and shared personal things the way married couples do. They

even went ring shopping, albeit separately and not together.

81.    Due to complications relating to the divorce action (a lawyer in the case had to go

on inactive status, there were issues relating to a medical condition which his wife was dealing

with at the time, etc.) his divorce decree was not official until March 2013. So Mr. Whitehurst

and Plaintiff were not able to marry for a few years. Ultimately, on February 10, 2014, they were

married in Florida.

## V. ALLEGATIONS REGARDING THE DEFENDANTS' CONDUCT

82. At all times material hereto the individual defendants and/or the members of the

Caesar Rodney School Board participated in, authorized, and/or sanctioned the federal

constitutional deprivations described above which illegally retaliated against Plaintiff.

83. The Individual Defendants' discriminatory and/or retaliatory animus and actions

against Plaintiff tainted the entire promotions process as it related to Plaintiff.

84. At all times material hereto the individual defendants, Defendant Caesar Rodney, the

Individual Defendants, and their agents were acting under color of law. The federal

constitutional deprivations described herein are fairly attributable to the State.

85. The actions of the Defendants and their agents or employees were deliberately,

17

intentionally, willfully, purposefully, and knowingly done in violation of federal constitutional rights and because of the exercise of those rights. The Defendants and/or the Caesar Rodney School Board either knew or showed a negligent or reckless disregard for the matter of whether their conduct violated federal constitutional rights. Their actions were outrageous and taken with evil motive, in bad faith, out of personal animus and without any reasonable grounds to support them. Their actions were wanton and malicious or taken with reckless indifference to federal constitutional rights. The exercise of rights under the U.S. Constitution made a difference in all actions adverse to Plaintiff. The exercise of these rights was a motivating or determinative factor in all actions adverse to plaintiff.

86. The Defendants did not reasonably believe that the actions they took were necessary to accomplish any legitimate governmental purpose.

87. The Individual Defendants' actions violated clearly established federal constitutional rights of which any official would have known.

88. The Defendants' actions were motivated by bias, bad faith, and improper motive.

89. The Defendants' actions constitute an abuse of governmental power.

90. The Defendants' actions do not further any narrowly drawn important, substantial or compelling governmental interest.

91. The Defendants' actions are not so reasonable as to further any governmental interest asserted and do not closely fit the goal of serving those governmental interests.

92. The actions of the Defendants were taken pursuant to State/Government policies, customs and/or practices were authorized, sanctioned, implemented, permitted, delegated and/or ratified by officials functioning at a policy making level.

93. By the policy, custom, and/or practice of official(s) functioning at a policymaking level, Defendants have retaliated against Plaintiff. Such policy, custom and/or practice caused a

deprivation of constitutional rights. Additionally, the State/Caesar Rodney School District must have known, or reasonably should have realized, from the nature of its conduct that its policy, custom and/or practice was causing or was likely to cause violations of constitutional rights.

94. Any actions which were taken against Plaintiff which were not taken by policymakers were done by non-policymakers motivated by discriminatory and/or retaliatory animus of which one or more policymakers knew of or believed were so motivated.

## COUNT I (First Amendment - Protected Association Retaliation/Discrimination)

95.     Plaintiff realleges and hereby incorporates paragraphs 1 - 94 set out above.

96.     Plaintiff is employed by Defendant Caesar Rodney, a public employer. Since March of 2011, three occasions she was denied promotion to the position of Assistant Principal.

97.     Plaintiff has an association with Mr. Whitehurst that is protected by the First Amendment.

98.     Defendants were aware of Plaintiff's protected association and it antagonized them.

99. There is a causal link between First Amendment protected activity regarding plaintiff's association with Mr. Whitehurst and the adverse actions of refusing to promote plaintiff, denying her transfer requests, denying her leave requests, and denying her training requests. This is demonstrated by:

(a)     the temporal proximity of events, as indicated above,

(b)     circumstantial evidence of a pattern of antagonism following protected activity, deliberately avoiding her, no longer communicating with her in the customary manner in school social settings, and just not acting pleasantly toward her,

(c)     personal knowledge and awareness of protected activity by the individual defendants,

(d)     the fact that Plaintiff was more qualified for the Assistant Principal

19

positions than the people who were promoted instead of her,

    (e)   any explanations given for not promoting are unworthy of credence,

    (f)   the evidence as a whole.

100. First Amendment protected association was a substantial or motivating factor in the refusal to promote plaintiff. The natural probative force of the evidence demonstrates causation.

101.   The Defendants cannot prove by a preponderance of the evidence that absent a constitutional violation they would have grounds to deny any of the promotions to Plaintiff.

102. The totality of retaliatory adverse action taken by Defendants against Plaintiff due to her association with Mr. Whitehurst is sufficient to deter any person of ordinary firmness from exercising their First Amendment rights to association.

103. Any reasonable person of ordinary firmness would be deterred from exercising their First Amendment right to free association when threatened with the denial of one or more promotions.

104.   The Defendants took action adverse to Plaintiff as a direct and proximate result of and in retaliation for Plaintiff's First Amendment protected association. There is a temporal and causal relationship between Plaintiff's aforementioned protected belief and association and adverse employment action. First Amendment protected activity was a substantial or motivating factor in the adverse employment action. The Defendants cannot prove by a preponderance of the evidence that absent a constitutional violation they would have grounds to deny any of the promotions to Plaintiff, any of Plaintiff's transfer requests, any of Plaintiff's leave requests, and/or any of Plaintiff's training requests.

105. Plaintiff's constitutional right to freedom of association have been denied under the First Amendment of the U.S. Constitution and 42 U.S.C. § 1983.

20

## COUNT II (Fourteenth Amendment Equal Protection -

## Fundamental Right -First Amendment)

106.   Plaintiff repeats and realleges paragraphs 1- 105 set out above.

107.   The First Amendment rights of speech, belief and association are fundamental rights guaranteed to plaintiff under the Fourteenth Amendment to the U.S. Constitution.

108.   The associations of an Achievement Liason Teacher also are rights guaranteed to plaintiff under state law.

109.   Plaintiff engaged in an association with Mr. Whitehurst of which Defendants disapproved.

110.   In derogation of fundamental constitutional rights the individual defendants caused Plaintiff to not be considered by the School Board for promotion to Assistant Principal.

111.   This discrimination is not justified by any compelling state interest which is narrowly drawn.  It cannot survive strict scrutiny analysis.

112.   There is no legitimate basis in fact for the treatment of Plaintiff nor is there any rational relationship to any legitimate governmental objective.

113.   The classification and discrimination which the Defendants created cannot survive rational basis analysis.

114.   Plaintiff's constitutional right to the equal protection of the law has been denied under the Fourteenth Amendment of the U.S. Constitution and 42 U.S.C. § 1983.

## COUNT III (Discrimination Under Delaware Discrimination in Employment Act)

115.   Plaintiff realleges and hereby incorporates paragraphs 1 - 114 set out above.

116.   In the year 2013, an Assistant Principal position at Allen Frear Elementary School

became vacant.

117.    Plaintiff was qualified for the Assistant Principal position.

118.    Plaintiff applied for the Assistant Principal position.

119.    Plaintiff was over 40 years old when the Assistant Principal position was filled.

120.    The Assistant Principal position was filled by a less qualified substantially younger person.

121.    The candidate who filled the position was 28 years old and Plaintiff was 52 years old at the time.

122.    Upon information and belief, all of the candidates chosen for a second round of interviews for the Assistant Principal position were under 40 years old and substantially younger and less qualified than Plaintiff.

123.    Plaintiff was not promoted to the Assistant Principal position due to her age.

124.    Any alleged non-discriminatory reasons for the treatment of Plaintiff are a pretext for discrimination.

125.    The motivating or determinative reason for the treatment of Plaintiff was her age. Any other reasons given by the Defendant are a pretext for discrimination.

126.    Plaintiff can demonstrate pretext because any legitimate non-discriminatory reasons offered by Defendant for its actions are unworthy of credence since Plaintiff can demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in her employer's proffered legitimate reasons for its actions that a reasonable fact finder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons.

127.    Alternatively, Plaintiff can demonstrate pretext because the natural probative force of all the direct and circumstantial evidence establishes that it is more likely than not that a motivating or determinative cause of the adverse employment action was Plaintiff's age.

128.    The Defendant cannot establish that it would have made the same employment decisions concerning Plaintiff if it had not been motivated by age discrimination animus.

129.    The Defendants actions were wilful and wanton and taken with a reckless disregard for Plaintiff's rights.

130.    As a direct and proximate result of the actions of the Defendant and its agents as detailed herein, Plaintiff has suffered irreparable injuries, including but not limited to past and future economic loss, past and future lost wages, lost back pay and front pay, lost pension and retirement benefits, and other lost benefits, decreased employment opportunities and other economic losses, emotional pain and suffering, mental anguish, humiliation, embarrassment, personal indignity and other intangible injuries for all of which she should be compensated.

**WHEREFORE,** plaintiff prays that the Court:

(a)    Enter judgment against the defendants, jointly and severally.

(b)    Enter a declaratory judgement declaring the acts of the defendants to be a violation of plaintiff's Constitutional and statutory rights.

(c)    Enter a judgment against the Individual Defendants for nominal or presumed damages.

(d)    Under the DDEA, enter a judgment against Defendant Caesar Rodney School District for compensatory damages, including lost past and future wages, back pay, retirement and other benefits, front pay, loss of earning capacity, emotional pain and suffering, humiliation,

embarrassment and injury to reputation, personal injuries, and any other pecuniary and/or non-pecuniary damages.

(e)     Issue a mandatory injunction requiring Defendant Caesar Rodney to plaintiff to the next available Assistant Principal position, granting Plaintiff a right of first refusal concerning upcoming Assistant Principal positions until she ultimately accepts an Assistant Principal position.

(f)     Issue a permanent injunction requiring the Defendants to notify everyone who learned of Defendants' treatment of Plaintiff that their conduct was illegal.

(g)     Enter a judgment against the Individual Defendants Howard for compensatory and punitive damages.

(h)     Award plaintiff costs, pre-and-post judgment interest, and attorneys' fees for this suit.

(i)     Require such other further relief as the Court deems just and proper under the circumstances.

MARTIN D. HAVERLY, ATTORNEY AT LAW

MARTIN D. HAVERLY, ESQUIRE
Del. Bar No. 3295
1011 Centre Road
Suite 117
Wilmington, DE 19805
(302) 994-2255

Martin@HaverlyLaw.com

Attorney for Plaintiff Wendy Schachte Whitehurst

Dated: August 29, 2014

24